# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIA PASCHAL, | ) |
| Plaintiff, | ) No. 17 cv 5627 |
| v. | ) Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julia Paschal ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits under the Social Security Act. The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment [dkt. 17] is granted; the Commissioner's motion for summary judgment [dkt. 21] is denied.

**I.    Background**

   **a.    Procedural History**

Plaintiff filed an application for disability benefits on November 27, 2013, alleging disability as of March 18, 2013.[1] [Administrative Record ("R") 316-28.] Plaintiff's claims were denied initially and again at the reconsideration stage, after which Plaintiff timely requested an administrative hearing, held on February 17, 2016 before Administrative Law Judge ("ALJ") Lovert R. Bassett. [R 37-84.] Plaintiff was represented by counsel, and both a Medical Expert ("ME") and a Vocational Expert ("VE") testified during the hearing. *Id.* On April 19, 2016, the ALJ issued a written decision denying

---

[1]    Plaintiff filed a prior application for disability on February 25, 2011, alleging disability as of December 13, 2010 [R 308-315], but the Court is unable to trace the disposition of that application with the record before us.

Plaintiff disability benefits. [R 10-21.] On June 1, 2017, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1-6.]

b. **Plaintiff's Background**[2]

Plaintiff has been diagnosed with mild-to-severe recurrent major depressive disorder and post-traumatic stress disorder. [R 599, 611, 622, 649-51, 676, 679, 681, 686, 700, 704, 799, 802, 815, 828, 830, 833, 838, 841, 845, 847, 850, 853, 857, 860, 863, 865, 923, 1015, 1018, 1021, 1023, 1035, 1041, 1044.] She has experienced depression since the age of fifteen, and since 2010 has been treated with psychotropic medications for depression and anxiety by her primary care physician her treating psychiatrists. [R 447, 480, 493, 497, 542, 549, 564, 567, 569, 579, 583, 593, 595-96, 598, 603, 620, 645-47, 649-51, 653, 655, 660, 677-79, 682-83, 686-87, 693, 703-04, 707, 712, 740-41, 761, 764, 808, 873, 922, 950, 956, 971, 979, 1015-016, 1019, 1021-022.] In September 2013 she was hospitalized for five days due to suicidality. [R 593-637.]

Plaintiff has degenerative disc disease in her cervical and lumbar spine with associated pain and limited range of motion. [R 547-48, 566, 570, 736, 743-44, 746, 967, 990-91.] She was also diagnosed as obese (Obese Class I - moderately obese), with a body mass index ("BMI") ranging between 30 to 34. [R 645, 651, 653, 678, 704, 728, 734, 736, 739, 741, 743, 745, 752, 754, 763, 929, 949, 952, 954, 957, 967, 970, 973, 980, 990, 1015, 1023.] Prior to January 2011, Plaintiff was diagnosed with reflex sympathetic dystrophy ("RSD"),[3] first in her left foot and then her in right foot. [R 493-94, 501, 725-60, 955-56, 960-61, 966, 974, 977.] Plaintiff was also diagnosed with RSD in both arms. [R 930.]

c. **The ALJ's Decision**

On April 19, 2016, the ALJ issued a written decision denying Plaintiff disability benefits.

---

[2] The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

[3] Reflex sympathetic dystrophy syndrome ("RSD" or "RSDS") (also known as complex regional pain syndrome ("CRPS")) is "a chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03-2p, 2003 WL 22399117 (Oct. 20, 2003). The Court uses RSD/RSDS/CRPS interchangeably throughout this opinion.

[R 10-21.] At Step One, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of March 18, 2013. [R 12.] At Step Two, the ALJ found that Plaintiff had the severe impairments of learning disability, depression, anxiety, degenerative disc disease of the lumbar spine, and small central disc protrusion at C5-6 of the cervical spine [*Id.*] The ALJ did not identify any nonsevere impairments. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 12-14.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work with no more than frequent use of the hands for grasping and fingering; she can understand, remember, and carry out simple job instructions; she is to have no interaction with the public; and she is to have no numerically strict production quotas that must be satisfied within rigid time-sensitive boundaries. [R 14] At Step Four, the ALJ found that Plaintiff was not capable of performing any of her past relevant work, which the ALJ listed as housekeeper, security guard, and nurse aide.[5] [R 19-20.] At Step Five, however, the ALJ found that Plaintiff was capable of performing the jobs of cleaner, mail clerk, and laundry sorter, which exist in significant numbers in the national economy. [R 20.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R 21.]

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[5] According to the VE's testimony at the administrative hearing, "nurse aide" (DOT 355.674-014) was not part of Plaintiff's past relevant work and that Plaintiff actually worked as a "companion" (DOT 309.677-010). [R 62.] The VE clarified this point when he corrected his Past Relevant Work Summary [R 487] based on Plaintiff's testimony, yet the ALJ still employed the uncorrected information in his decision.

3

claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the

Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

The ALJ's evaluation of Plaintiff's diagnoses of reflex sympathetic dystrophy are at issue in the instant matter. Reflex sympathetic dystrophy syndrome (also known as complex regional pain syndrome) is "a chronic pain syndrome most often resulting from trauma to a single extremity…The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma…It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 03-2p, 2003 WL 22399117 (Oct. 20, 2003).

Plaintiff in the instant matter argues that the ALJ erred in his subjective symptom evaluation with respect to Plaintiff's reflex sympathetic dystrophy diagnoses. Specifically, Plaintiff argues that per Social Security Ruling ("SSR") 03-2p, because RSD pain is typically out of proportion with objective evidence of impairment, and because of the transient nature of the clinical findings indicative of RSD/CRPS, the ALJ erred when he failed to identify and assess the severity of Plaintiff's RSD/CRPS and when he failed to explain why this diagnosed condition was not considered medically determinable. The Court agrees.

SSR 03-2p describes how RSD/CRPS should be evaluated, providing clarification of the regulatory requirements ALJs must follow in the specific context of assessing the pain conditions of RSD and the related condition of CRPS. *Id.* SSR 03-2p provides in part:

> RSDS/CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings, as discussed above. RSDS/CRPS may be the basis for a finding of "disability." Disability may not be established on the basis if an individual's statement of symptoms alone.
>
> For purposes of Social Security disability evaluation, RSDS/CRPS can be established

5

> in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant:
>
> - Swelling;
> - Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), changes in skin temperature, and abnormal pilomotor erection (gooseflesh);
> - Abnormal hair or nail growth (growth can be either too slow or too fast);
> - Osteoporosis; or
> - Involuntary movements of the affected region of the initial injury.
>
> When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

*Id.*

In an analysis of the Social Security disability case law concerning RSD/CRPS cases, we note that multiple district courts have held that when a plaintiff has been diagnosed with RSD/CRPS by two or more physicians, a medically determinable impairment has been established and an ALJ's failure to address these diagnoses during the sequential evaluation process constitutes reversible error. *Scott v. Colvin*, 2017 WL 1243154, at *8 (M.D. La. Feb. 24, 2017) (citing *Mangus v. Astrue*, 2010 WL 2403959, at *3 (N.D. Tex. June 15, 2010); *Bernstein v. Astrue*, 2010 WL 746491, at *5 (M.D. Fla. Mar. 3, 2010); *Welch v. Colvin*, 2015 WL 4940666, at *4-5 (S.D. Miss. Aug. 19, 2015); *Hawkes v. Colvin*, 2014 WL 129341, at *5 (S.D. Ga. Jan. 14, 2014); *Volk v. Astrue*, 2012 WL 4466480, at n.4 (M.D. Fla. Sept. 27, 2012); *Hill v. Astrue*, 2011 WL 679940, at *9-10 (M.D. Fla. Feb. 16, 2011)). At least four district courts have found reversible error where an ALJ failed to address RSD/CRPS and SSR 03-2p in the sequential evaluation process where only a single treating physician had diagnosed the plaintiff with RSD/CRPS. *Scott*, 2017 WL 1243154, at *8-10; *Hoyle v. Colvin*, 2014 WL 7369428 (D.S.C. Dec. 23,

2014); *Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176-77 (C.D. Cal. 2011); *Songer v. Astrue*, 2011 WL 849961 (S.D. Ind. Mar. 9, 2011).

In the instant matter, Plaintiff's medical record from Northshore Medical Group is replete with mentions of Plaintiff's diagnosis of bilateral foot RSD beginning around 2010. [R 494, 501, 725-60, 955-56, 960-61, 966, 974, 977.] It appears it may have been one of Plaintiff's primary treaters, Dr. Dickson Wu, M.D., who diagnosed Plaintiff's foot RSD/CRPS,[6] but neither party (nor the ALJ) mentions the date of the initial RSD diagnosis or the name of the treater who diagnosed it. Nor was the Court able to locate the same. Regardless, *at least one* treater diagnosed Plaintiff with RSD. Additionally, the consultative examiner, James Elmes, diagnosed Plaintiff with bilateral arm RSD, and Plaintiff's "history of reflex sympathetic dystrophy of both arms" was discussed by the ME at the administrative hearing. [R 55, 930.] There does not appear to be any evidence in the record that contradicts Plaintiff's RSD/CRPS diagnoses.

Despite the RSD diagnoses mentioned in Plaintiff's medical records and affirmed by the consultative examiner, the only mention the ALJ made to Plaintiff's RSD of either the upper *or* lower extremities was that "Dr. Elmes diagnosed…reflex sympathetic dystrophy of both arms…[but] noted that the objective findings did not seem to support the subjective complaints of this patient." [R 17.] The ALJ made no mention at all of Plaintiff's lower limb RSD (which appears to have been more longitudinal in nature than the upper limb RSD), nor did he discuss the abnormal clinical findings Plaintiff's treater Dr. Chae Han-Chang, M.D. made when she noted both swelling and abnormal color and pigmentation of Plaintiff's left foot on January 6, 2011, along with Plaintiff's complaints about persistent limiting pain. [R 493-94.] According to SSR 03-2p, once the record documents persistent

---

[6] Although R 728 is a June 4, 2015 record from Dr. Wu diagnosing Plaintiff with CRPS, the Northshore Medical Group records show a historical RSD/CRPS diagnosis existing prior to January 6, 2011 when Plaintiff saw another of her primary treaters, Dr. Chae Han-Chang, M.D., who noted the prior left lower limb RSD diagnosis and also noted swelling and abnormal color and pigmentation of Plaintiff's left foot at that time, along with Plaintiff's complaints of persistent pain. [R 493-94.]

7

limiting pain, then swelling and autonomic instability (*i.e.*, abnormalities in color) are among two of the factors that when even a single factor is "documented at some point in time since the date of the precipitating injury, disability adjudicators *can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment.*" SSR 03-2p (emphasis added). Because Plaintiff had a definitive diagnosis of RSD/CRPS by a treating physician, as well as long-documented severe pain, with at least one instance of swelling, and abnormalities in color/pigmentation in her feet, the Court finds that Plaintiff's RSD/CRPS was a medically determinable impairment. *See Scott*, 2017 WL 1243154, at *10; SSR 03-2p. It does not matter that Plaintiff's clinical abnormalities may not have presented continuously, because a hallmark of RSD is transient medically determinable findings. *See* SSR 03-2p. Under the plain language of the Ruling itself, Plaintiff's RSD of her feet should have been evaluated by the ALJ under SSR 03-2p.[7] It was not. In fact, it appears the ALJ may not have even been aware of SSR 03-2p. Therefore, the Court cannot conclude the ALJ applied the proper legal standard in evaluating Plaintiff's RSD/CRPS.

The ALJ erred in not only his subjective symptom evaluation as Plaintiff alleges, but he also erred earlier in the sequential evaluation process when he failed to discuss, at Step Two, whether Plaintiff's medically determinable impairment of RSD constituted a severe a medically determinable impairment. We adopt the language of another court that remanded based on a failure to properly address RSD/CRPS issues: "[t]he ALJ's failure to address RSD at Step Two in the sequential process (and thereafter) is clear error that requires reversal and remand. [Additionally, the] ALJ's passing reference to [the RSD] diagnosis at Step Four clearly does not meet the requirements for evaluating RSD set forth in SSR 03-2p." *Hoyle v. Colvin*, 2014 WL 7369428, at *5 (D.S.C. Dec. 29, 2014); *see also Scott*, 2017 WL 1243154, at *10. The ALJ was free to reject Plaintiff's RSD/CRPS diagnoses or any

---

[7] It is possible that Plaintiff's bilateral arm RSD should also have been evaluated by the ALJ under SSR 03-2p, but Plaintiff has not pointed the Court to the abnormal clinical findings that would support this. That does not mean none exist, but "[w]e will not scour a record to locate evidence supporting a party's legal argument." *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005).

8

functional limitations due to the impairments, or to determine that Plaintiff's RSD did not constitute a severe medically determinable impairment, but not without presenting specific, legitimate reasons for rejecting these diagnoses. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176-77 (C.D. Cal. 2011). We must remand on these bases.

**IV.     Conclusion**

Because the ALJ failed to apply the appropriate legal standard related to RSD/CRPS and because his opinion lacked an adequate discussion of the issues, the Court must reverse and remand for proceedings consistent with this opinion, including but not limited to a reconsideration of Plaintiff's RSD/CRPS in accordance with SSR 03-2p. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 17] is granted; the Commissioner's motion for summary judgment [dkt. 21] is denied.

Entered: 8/28/2018

U.S. Magistrate Judge, Susan E. Cox